# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MARTY CORTEZ, a single woman, on her own behalf on, as Guardian and Conservator for Philip Cortez, on behalf of Philip Cortez, an incapacitated person,<br><br>Plaintiffs,<br><br>vs.<br><br>BRIAN HAWTHORNE (first name unknown); STATE OF ARIZONA, a body politic; BILL SKOL, TODD SPRINGSTEEN (first name unknown);<br><br>Defendants. | CV 09-00526-TUC-DCB [CRP]<br><br>**REPORT AND RECOMMENDATION** |

Defendants having filed a Motion To Dismiss *[Doc 21]* Plaintiff's First Amended Complaint *[Doc 10]*. For the reasons discussed below, this Court recommends that the Motion be denied as to Counts 1, 2 and 5. As to Count 3, the Motion should be granted, with leave to Plaintiffs to amend the pleadings. Concerning Counts 4, 6, and 7, the Motion should be granted and those counts should be dismissed with prejudice.

At the outset, the Court notes that Plaintiffs concede the Counts 4 and 6 should be dismissed with prejudice. Plaintiffs further concede that Count 1 can only proceed on a standard of gross negligence, as opposed to simple negligence. That leaves three issues to be determined:

1) Do Counts 1, 2 and 5 fail to state a claim under *Iqbal*?

2) Does Count 3 fail to state a claim under *Iqbal*?

3) Does the failure to satisfy the Arizona notice of claim statute require dismissal of Count 7?

**STATEMENT OF FACTS**

On November 16, 2007, Philip Cortez was incarcerated at the Morey Unit, Buckeye Complex of the Arizona State Prison. Defendant Skol was a corrections officer at Morey. On the day in question, Skol escorted Cortez and two other inmates from the visitation area back to their housing unit. In the course of that transport, the two inmates brutally beat Cortez, kicking him repeatedly in the head. As a consequence, Cortez suffered serious brain damage and is mentally incapacitated.

In paragraph 17 of the First Amended Complaint, Plaintiff alleges the State and Skol were grossly negligent by:

1) violating ADOC policies concerning use of restraints;
2) ignoring the special risk to Philip Cortez represented by his request for protective segregation and prior placement in protective segregation;
3) knowledge that the other two inmates were potentially violent;
4) use of only one officer for transport given these considerations;
5) Skol's decision to turn his back on the inmates to open the door.

The only non-conclusory allegation concerning Defendants Hawthorne and Springsteen is that they were the first to arrive to the scene of the assault to backup Skol. (Doc 10, p.3, ¶ 13).

**COUNTS 1, 2 AND 5**

The claims in Counts 1, 2 and 5 are related. Count 1 asserts gross negligence claims against the State of Arizona and Skol. Count 2 asserts a civil rights deprivation claim against Skol. Count 5 asserts a claim for punitive damages. The legal theories in Counts 1 and 2 could potentially support a claim for punitive damages if the appropriate factual predicate is met.

Defendants' motion to dismiss Count 2 relies largely on *Ashcroft v. Iqbal*, ____ U.S. ____, 129 S.Ct. 1937 (2009).[1] As to counts 1 and 2, Defendants maintain the only non-

---

[1] Defendant did not cite *Iqbal* in arguing for dismissal of Count 1. Plaintiff suggested in oral argument that *Iqbal* might not apply since Count 1 is a state law based claim. This

- 2 -

conclusory allegations are that Skol "did not use full restraint on all three of the inmates being transported, that he was the only correctional officer transporting them, and that he turned his back on the inmates in order to open a door." (Doc 21, pp.4-5, 6).

*Iqbal* was decided by the Supreme Court on May 18, 2009, less than eight months ago. Perhaps no other Supreme Court decision has had such an immediate and significant impact on procedure in federal court. Doing a Westlaw Keycite search of the *Iqbal* cite on January 14, 2010, revealed 12,676 documents. Motions to dismiss for failure to state a claim are frequently filed since *Iqbal*.

*Iqbal* stands on the shoulders of the Supreme Court's decision from the October 2006 term in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007). Plaintiffs in *Twombly* brought a class action against various phone service providers under the Sherman Anti-Trust Act. Plaintiffs alleged certain parallel conduct by different regional phone providers had an anti-competitive impact on pricing. Based on this parallel conduct, plaintiffs alleged, on information and belief, that defendants entered into a contract, combination or conspiracy to preclude competitors from the marketplace. The "contract, combination or conspiracy" element was required for the cause of action under the Sherman Act. *Twombly*, 550 U.S. at 549-553, 127 S.Ct. At 1961-1963.

The Supreme Court in *Twombly* rejected the long-standing "no set of facts" to support a claim for relief standard established in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957). Rather, *Twombly* held that plaintiff must allege sufficient facts in a non-conclusory fashion to show a "plausible" claim for relief. *Twombly*, 550 U.S. 556, 127 S.Ct. 1965. In *Twombly*, no plausible claim for relief was stated because there was no specific allegation of an agreement, only the inference suggested by parallel conduct. *Iqbal* made clear the *Twombly* plausibility standard was not limited to anti-trust actions. Ironically, Justice Souter wrote the majority opinion in *Twombly* and the principal dissent in *Iqbal*.

---

issue was not briefed, however, it is irrefutable that the Federal Rules of Civil Procedure apply to this case. *Iqbal* interprets the appropriate standard for applying Rule 8(a). Therefore, this Court will apply *Iqbal* to Counts 1, 2, and 5.

1  The Court in *Iqbal* readopted from *Twombly* its description of what a plausible claim
2  fo relief is. *Iqbal*, 129 S.Ct. At 1949-1950. Conclusory allegations that defendant harmed
3  a plaintiff will not suffice, but "detailed factual allegations" are not required. *Id.* Plausibility
4  does not equate with a probability, but is more than a mere possibility. *Id.* Facts merely
5  consistent with liability fall short. *Id.* Importantly, the Court stated that the judicial
6  determination of a plausible claim for relief will "be a context-specific task that requires the
7  reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at
8  1950. Finally, the Court noted in *Twombly*, "... of course, a well-pleaded complaint may
9  proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and
10 'that a recovery is very remote or unlikely.'" *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.

11     The petitioners in *Iqbal* were two very high-ranking government officials, the former
12 Attorney General and the former Director of the Federal Bureau of Investigation. They were
13 two among 53 defendants in the action. The 21 claims for relief focused not on the decision
14 to arrest and detain, but rather on the conditions of confinement, and particularly the
15 treatment by the jailers. *Iqbal*, 129 S.Ct. At 1943-1944. The Court twice acknowledged that
16 actionable claims for relief against some of the governmental actors were set forth, and these
17 allegations amounted to "unconstitutional misconduct" and "serious official misconduct" on
18 behalf of some defendants other than petitioners' Ashcroft and Mueller. *Iqbal,* 129 S.Ct. at
19 1942, 1952.

20     In the case before this Court, the first amended complaint specifically alleges Skol
21 violated ADOC policies, transported the inmates unrestrained, transported them by himself,
22 was aware of the inmates potential for violence, turned his back to the inmates when opening
23 the door and that Philip Cortez had requested and received protective segregation status in
24 the past. Those specific, non-conclusory allegations are sufficient to nudge these claims,
25 gross negligence, civil rights violations and punitive damages, from possible to plausible.
26 Plausible does not mean probable. The other non-conclusory allegations relevant to this
27 determination are the seriousness of Philip's injuries and Skol and the State's duty to protect
28 him. The Court, drawing on its judicial experience and common sense, determines that *Iqbal*

is satisfied by Counts 1, 2 and 5.

It is important to note that both *Twombly* and *Iqbal* cite the expense of discovery leading to defendants settling frivolous suits as justification for establishing "plausible" as the Rule 8(a) standard. This case presents exactly the opposite abuse. Plaintiffs in this case provided factual development in the original claim and further development though a supplement. Defendants reflexively relied on *Iqbal* and filed this pending motion to dismiss because the facts are not all contained within the four corners of the amended complaint.

To preserve state claims, plaintiffs had to file an administrative notice of claim with the State. To support their motion to dismiss Count 7, defendants attached the original notice of claim and the supplement to the notice of claim as an appendix to the motion to dismiss.

Plaintiffs filed a public records request to get documents related to the attack on Cortez. The State resisted the request requiring plaintiffs to file a lawsuit to obtain the records. The supplement to the Notice of Claim referred to the correctional expert hired by plaintiffs, W.L. "Kip" Kautzky. Specifics of the Kautzky's opinion were referenced in the supplement, and Kautzky's curriculum vitae and his two page letter summarizing his opinions were attached.

Additionally, the supplement referenced a two minute delay before ADOC employees used pepper spray to intercede and stop the assault. Presumably, this is information obtained when plaintiffs were finally successful with their public records lawsuit. Clearly, the factual development in the original claim and the supplement goes far beyond the requirements of Rule 8.

The Court asked Assistant Attorney General Gottfried how the information in the supplement to the notice of claim impacted the motion to dismiss. Mr. Gottfried responded that *Iqbal* required that the determination be made within the four corners of the amended complaint. While that is a correct statement of the law, it misses the point.

The Court imposed the "plausible" standard to give the trial courts the "gatekeeper" function and ability to weed out claims based purely on speculation with no plausible claim for relief. The purpose was to increase fairness and justice for the parties to the case. In

*Twombly*, the Court was primarily concerned with the extraordinary complexity and expense of anti-trust litigation. In *Iqbal*, the Court was concerned with the potential burden, distraction and interference with duties the pending litigation could impose on two high-ranking public officials. The Court did make clear in *Iqbal* that "plausible" would be the standard of review for pleadings for all civil cases in federal court. But the purpose was to improve the justice system, not encourage gamesmanship.

In this case, the State complains that inadequate facts were pleaded, even though they actively resisted providing the information[2]. Then when the information is detailed in the claim supplement, including the preliminary expert report, the attorney for defendants complains it is not in the complaint. This widespread reflexive reliance on *Iqbal* by defendants greatly disserves the interests of justice. Such disservice is dramatically displayed in this case where defendants complain inadequate facts are pleaded, actively resist disclosing facts and then act as if facts disclosed to them by plaintiffs should be ignored by the defendants and the court. This kind of conduct cannot be what the Court envisioned when deciding *Iqbal*. Nothing in *Iqbal* justifies these gamemanship attempts to block plaintiffs from the courthouse door, all the more disappointing where, as here, defendants are the government.

**COUNT 3**

Count 3 alleges civil rights violations against defendants Hawthorne and Springsteen. The only non-conclusory allegations against these defendants is that they were the first officers to arrive at the scene of the attack to backup Skol. While this allegation is factual, it is not material to any theory of liability, particularly the one stated in Count 3. There is no

---

[2]At oral argument, plaintiff's counsel noted that once served with the public records lawsuit, the State Attorney General Office was helpful in getting the documents requested. The videotape of the incident still has not been disclosed. At the hearing, this Court ordered disclosure of that videotape within 21 days. The videotape will necessarily provide both sides additional details of what took place in the attack. Defense counsel indicated that while he is aware of the existence of the videotape, he has not yet reviewed it. This focus on the technical pleading aspect instead of fundamental factual development could become a commonplace and highly unfortunate outcome of *Iqbal*.

basis in the amended complaint for defendants or the Court to determine what wrongful conduct is asserted against Hawthorne and Springsteen.

It is recommended that Count 3 be ordered dismissed with leave to amend. A deadline for amending pleadings will be set in the scheduling order.

**COUNT 7**

In Count 7, Marty Cortez claims damages for intentional infliction of emotional distress because state officials did not notify her of her son's condition for one month after the attack. This is a state law claim. It is undisputed that this claim was not presented in the administrative claim filed pursuant to A.R.S. § 12-821-01. Plaintiffs argue that because this requirement is a procedural one, it is not enforceable in federal court. Defendants argue it is like a state statute of limitations which is routinely adopted by federal court.

This Court agrees with defendants' position. The requirement to filed a notice of claim prior to suit against a governmental entity is a mandatory precondition to such a suit. While the state can waive the requirement, here they have not done so. To accept plaintiff's argument would subvert an important state interest, controlling the extent and manner in which the state is abrogating sovereign immunity. The mandatory notice of claim procedure is enforceable in federal court as to state law claims. As to federal claims, federal preemption negates the need for complying with the claim statute.

Because plaintiffs did not present this claim in its administrative notice of claim, Count 7 should be dismissed. Because timely compliance is no longer possible, no leave to amend should be granted.

**THEREFORE, IT IS THE REPORT AND RECOMMENDATION** of this Court that District Judge Bury, after his independent review and consideration, enter an order as follows:

1. Granting the Motion To Dismiss *[Doc 21]* in part.
2. Dismissing Counts 4, 6 and 7 with prejudice.
3. Dismissing Count 3, with leave to amend.
4. Denying the Motion To Dismiss as to Counts 1, 2, and 5.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within fourteen (14) days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CV 09-00526-TUC-DCB.**

DATED this 28th day of January, 2010.

**CHARLES R. PYLE**
UNITED STATES MAGISTRATE JUDGE