WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marty Cortez, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>Bill Skol, et al., )<br>)<br>Defendants. )<br>)<br>_____ ) | CV 09-00526-TUC-JGZ<br>**ORDER** |

On April 23, 2012, Magistrate Judge Pyle issued a Report and Recommendation ("R&R") (Doc. 216) in which he recommended that the Motion for Summary Judgment filed by Defendants Bill Skol, Keirone Kendall, Paul DeFabiis and the State of Arizona on April 11, 2011 (Doc. 188) be granted in part and denied in part. The R&R provided that any party could file written objections within fourteen (14) days after being served with a copy of the R&R. On June 13, 2012, Defendants the State of Arizona and Skol filed their Objections to the Magistrate Judge's R&R. (Doc. 224.) Plaintiffs filed their Response to Defendants' Objections on June 22, 2012. (Doc. 225.) For the following reasons, the Court will adopt the R&R in part, reject the R&R in part, and enter summary judgment in favor of Defendants.

**STANDARD OF REVIEW**

The Court reviews *de novo* the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear

error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

**FACTUAL BACKGROUND**

Except as expressly noted below, the factual background contained in Magistrate Judge Pyle's R&R is uncontested. As such, it is adopted by reference herein.

**ANALYSIS**

Plaintiffs' Second Amended Complaint alleges five counts against Defendants:

| | | |
|---|---|---|
| Count One: | Gross Negligence, State of Arizona[1] | |
| | (Plaintiffs Philip and Marty Cortez) | |
| Count Two: | 42 U.S.C. § 1983, Defendant Skol | |
| | (Plaintiff Philip Cortez) | |
| Count Three: | 42 U.S.C. § 1983, Defendant Kendall | |
| | (Plaintiff Philip Cortez) | |
| Count Four: | Punitive Damages, 42 U.S.C. § 1983, all Defendants | |
| | (Plaintiff Philip Cortez) | |
| Count Five: | 42 U.S.C. § 1983, Defendant DeFabiis | |
| | (Plaintiff Philip Cortez) | |

The Magistrate Judge recommended that summary judgment be denied as to Count One against the State and Counts Two and Four against Defendant Skol. The Magistrate Judge recommended that the District Court grant summary judgment on the remaining counts and dismiss Defendants Kendall and DeFabiis. Plaintiffs did not oppose Defendants' Motion for Summary Judgement as to Count Three. Plaintiffs do not object to the R&R's conclusion that Summary Judgement be granted as to Count Five.

Defendants object to the Magistrate Judge's R&R on four grounds: (1) Plaintiffs failed to comply with LRCiv 56.1(b); (2) Officer Skol was not deliberately indifferent to Cortez's safety; (3) Officer Skol should be granted qualified immunity from monetary damages; and

---

[1] Although the Second Amended Complaint alleges Count One against all Defendants, Plaintiffs' Response to Defendants' Motion for Summary Judgment states that Count One is alleged only against the State of Arizona. (Docs. 131, pg. 4; 197, pg. 2.) The Report and Recommendation relies on the allegations of Plaintiffs' Response. (Doc. 216, pg. 10.)

- 2 -

(4) Defendant State of Arizona is entitled to summary judgment on Plaintiffs' gross negligence claims. The Court concludes that no material issue of fact exists as to Counts One, Two or Four of the Second Amended Complaint, and that this case should be dismissed in its entirety.

### 1. The Court declines to grant summary judgment for Defendants based on Plaintiffs' failure to comply with LRCiv 56.1(b).

Plaintiffs failed to comply with LRCiv 56.1(b), which requires a party opposing summary judgment to specifically dispute the movant's factual assertions. Plaintiffs' Statement of Facts presents only Plaintiffs' own factual assertions as well as evidentiary objections to Defendants' Statement of Facts, most of which were withdrawn at oral argument. Defendants contend that because Plaintiffs failed to dispute Defendants' facts, they have admitted Defendants' facts and therefore Defendants are entitled to summary judgment. Defendants raised this argument in their Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment but the Magistrate Judge did not expressly address it in the R&R.

As a threshold matter, Defendants' Objection relies on a former version of LRCiv 56.1(b). The current version of LRCiv 56.1(b) does not mandate that facts not specifically objected to will be deemed admitted. *See* LRCiv 56.1(b) ("any party opposing a motion for summary judgment must file a statement ... setting forth for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact ..."). In addition, review of the R&R indicates that the Magistrate Judge's factual background relied primarily on citation to Defendants' Statement of Facts. (Doc. 216, pgs. 2-10.) Thus it appears that the Magistrate Judge implicitly deemed Defendants' Statement of Facts admitted. To the extent the Magistrate Judge considered facts alleged by Plaintiffs, the Magistrate Judge: (a) relied on portions of Plaintiffs' Statement of Facts to which Defendants did not object; (b) relied on deposition transcripts or other admissible evidence attached to Plaintiffs' Statement of Facts, and/or (c) described the factual allegation as disputed.

1    The Court does not wish to condone Plaintiffs' failure to comply with LRCiv 56.1(b);
2 failure to comply with this local rule severely restricts the Court's ability to parcel out the
3 disputed and undisputed material facts in adjudicating a summary judgment motion.
4 However, Defendants have failed to point to any specific fact alleged in Defendants'
5 Statement of Facts which was not deemed admitted by the Magistrate Judge and which in
6 turn affected the Magistrate Judge's legal analysis to Defendants' detriment. The Magistrate
7 Judge did a commendable job of reviewing the parties' factual allegations and summarizing
8 the facts as "uncontested unless otherwise indicated." (Doc. 216, pg. 2.)   Accordingly, the
9 Court rejects Defendants' first Objection to the R&R.

10    **2.    Officer Skol was not deliberately indifferent to Cortez's safety**.

11    Defendants object to the Magistrate Judge's conclusion that a material issue of fact
12 exists as to whether Defendant Skol acted with deliberate indifference to Plaintiff Cortez's
13 safety. The R & R states: "Based on decisions Defendant Skol made and facts he knew, the
14 substantial risk to Plaintiff Cortez was so obvious that a reasonable jury could conclude he
15 knew of the substantial risk and disregarded it." The Magistrate Judge's conclusion relied
16 on the following findings: (1) Defendant Skol violated his and several other officers'
17 personal policy when he escorted three MDU inmates by himself; (2) Defendant Skol pushed
18 a cart during the transfer; (3) Defendant Skol was transferring the inmates across "no-man's
19 land," which increased the risk to Plaintiff Cortez; (4) Defendant Skol knew of a potentially
20 dangerous relationship between the inmates he was escorting; (5) evidence suggests that
21 Defendant Skol knew that Plaintiff Cortez had been a PC inmate in the past and had recently
22 applied for PC classification; (6) Defendant Skol did not physically intervene during the
23 attack; and (7) Defendant Skol's credibility may be challenged by contradicting testimony
24 from Sergeant Hawthorne regarding whether physical intervention was required to stop the
25 fight. Defendants contend that these seven factors do not create a material issue of fact as
26 to Defendant Skol's actual knowledge of a substantial risk. Based on its own independent
27 review of this review, the Court agrees.
28

- 4 -

"A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). For various reasons discussed below, this Court concludes that the seven factors cited by the Magistrate Judge do not create a material issue of fact as to whether Defendant Skol "actually" and "subjectively" knew that Plaintiff Cortez was at risk during the transfer. *Id.* at 838. First, some of the findings were not supported by evidence in the record. There is no admissible evidence to support the finding that Defendant Skol knew of a potentially dangerous relationship between the inmates he was escorting. That finding was based solely on a statement attributed to Defendant Skol's partner, Officer Smith, recounted in an administrative investigation report prepared by Investigator Schonig. Officer Smith's statement included in Schonig's report is inadmissible hearsay.[2] Similarly, no evidence suggests that Defendant Skol knew that Plaintiff Cortez had been a PC inmate in the past and had recently applied for PC classification. The Magistrate Judge's conclusion to the contrary relied on the deposition testimony of Sergeant Hawthorne. That testimony established only Sergeant Hawthorne's belief that correction officers who worked in the detention unit would know that Plaintiff Cortez was a PC inmate; however, it is undisputed that Defendant Skol is a visitation officer and did not work in the detention unit.[3] (Doc. 198-5, pg. 42-43; Doc. 189-1, pg. 3.) There is also insufficient evidence to support the finding that Defendant Skol subjectively knew that a transfer across "no-man's land" meant a greater safety risk to

---

[2] In addition, Officer Smith later clarified that Defendant Skol had not learned of any tension between the inmates until after the attack, and Officer Smith's testimony on that point is undisputed.

[3] In addition, as discussed in section 4, Plaintiff Cortez was not PC status at the time of the attack; he was housed in the detention unit for a disciplinary infraction. The Magistrate Judge's conclusion that evidence suggested that Skol knew of Cortez's PC status was inconsistent with his conclusion that the undisputed evidence demonstrated that "all three inmates were in the MDU for disciplinary reasons." (Doc. 216, pg. 15.)

- 5 -

1 himself or the prisoners he was transporting. Corrections Officer Rick Johnson testified that, for safety reasons, he would not escort three inmates across no-man's land, but he did not testify that this was a widely-held belief among corrections officers and there was no evidence that Defendant Skol shared this belief. (Doc. 198-2, pg. 13.)

Second, after independent review of the record, the Court concludes that the officer testimony regarding whether a corrections officer should ever escort three inmates alone does not have legal significance. Although several corrections officers testified that they would not escort three inmates without assistance, and Defendant Skol testified that it is not "the best or ideal practice for one officer to escort three inmates," this testimony does not give rise to a reasonable inference that Defendant Skol subjectively knew that his actions would put Plaintiff Cortez at risk. (Doc. 189-1, pg. 8). Not even violation of a formal policy, much less a "personal policy," can give rise to a § 1983 claim. *See, e.g., Rogers v. Phoenix Police Dept.*, 2008 WL 5156092, *9 (D. Ariz. 2008) (violation of a local policy is not actionable under § 1983, which does not provide a cause of action for violations of state law or state constitutional rights or local policies) (citing *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir.1981)). Moreover, Defendant Skol testified that he and other visitation officers had previously escorted three inmates at once without any problems, and that he was aware that his own safety could be in jeopardy during certain escort scenarios. (Doc. 189-1, pgs. 8-9.) Given the entirety of Defendant Skol's testimony, the fact that Defendant Skol escorted three inmates when he knew that his own personal safety was better ensured by a one-on-one escort scenario leads to only one logical conclusion: Defendant Skol did not subjectively believe there was a safety concern. A reasonable juror would not conclude, based on the evidence before the Court, that Defendant Skol willfully disregarded a "personal policy" designed to insure his own safety in order to transfer three inmates at once.[4]

---

[4]The Court notes that the Magistrate Judge's conclusion that Defendant Skol's escorting three inmates was indication that he knew of a substantial risk is inconsistent with the Magistrate Judge's finding that Defendant DeFabbis' decision to prepare three inmates for transport without leg irons was not a risk. In reaching the decision regarding DeFabbis, the Magistrate Judge found: "Even if Defendant DeFabiis knew Plaintiff Cortez had been in protective custody previously and he knew that inmate Cruz was classified STG, a reasonable jury could not

1    Third, the this Court concludes that the R&R incorrectly afforded legal significance
2 to the fact that Skol pushed a cart during the transfer. As a threshold matter, there is no
3 evidence that the cart pushed by Defendant Skol during the transfer had any bearing on the
4 attack of Plaintiff Cortez. The attack occurred when Defendant Skol stopped at the gate and
5 turned away from the prisoners in order to unlock the gate. (Doc. 189, pg. 8.) The presence
6 of the cart is also not persuasive evidence that Skol disregarded a substantial risk to Cortez.
7 While evidence of carelessness might be used to infer that Skol was aware of and disregarded
8 a substantial risk to Cortez, the fact that Skol was pushing a cart does not constitute evidence
9 of carelessness. There is no testimony or other evidence that Skol was distracted by the cart;
10 the investigator's mere speculation that Skol might have been distracted by the cart is not
11 enough for a reasonable jury to conclude that because Skol was pushing a cart during the
12 transfer he was aware of a risk to Cortez and substantially disregarded it.

13    Finally, the R&R incorrectly assessed the evidence regarding the tactics used by
14 Defendant Skol to stop the attack on Plaintiff Cortez. Defendant Skol's decision not to
15 physically intervene during the attack and testimony from Sergeant Hawthorne regarding
16 whether physical intervention was required to stop the fight are not relevant to the deliberate
17 indifference inquiry. "A prison guard, acting alone, is not required to take the unreasonable
18 risk of attempting to break up a fight between two inmates when the circumstances make it
19 clear that such action would put [him] in significant jeopardy." *Guzman v. Sheahan*, 495
20 F.3d 852, 858 (7th Cir. 2007). Even when the facts are construed in the light most favorable
21 to Plaintiffs, Defendant Skol's actions were reasonable as a matter of law: he verbally
22 ordered the attackers to stop, called for back-up, and deployed three rounds of pepper spray
23 at the attackers. *See, e.g., MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995)
24 (affirming grant of summary judgment on deliberate indifference claim where officers

---

conclude that Defendant DeFabiis acted with deliberate indifference when he secured the inmates for transport together without leg irons. At the time of the incident, all three inmates were in the MDU for disciplinary reasons. Plaintiff Cortez was not in protective custody. **Inmates housed in the MDU for disciplinary reasons can be escorted together unless there is a known issue between the inmates.**" (Doc. 216, p. 15 (emphasis added.))

- 7 -

refrained from physically intervening in fight and instead called for back-up); *see also Farmer*, 511 U.S. at 844 (prison officials may not be held liable for deliberate indifference if they respond reasonably to the risk, even if the harm is not ultimately averted). Given the undisputed facts regarding the attack, it is not for a jury to decide whether given the magnitude of the risk to himself, Defendant Skol was deliberately indifferent to the safety of Plaintiff Cortez when he failed to physically intervene in the attack.

Having viewed the evidence and all reasonable inferences therefrom in the light most favorable to Plaintiffs, the Court concludes that there is no genuine issue of fact as to whether Defendant Skol subjectively knew of and disregarded an excessive risk to Plaintiff Cortez's safety. Defendants are entitled to summary judgment on Counts Two and Four of the Second Amended Complaint.

**3.    The Court need not consider whether Officer Skol should be granted qualified immunity from monetary damages.**

As the Court declines to adopt the finding that a material issue of fact exists as to whether Defendant Skol was deliberately indifferent to a risk of harm to Plaintiff Cortez, and instead grants summary judgment to Defendants on Counts Two and Four, the Court does not consider Defendants' objection to the Magistrate Judge's finding that Defendant Skol is not entitled to qualified immunity.

**4.    Defendant State of Arizona is entitled to summary judgment on Plaintiffs' gross negligence claims.**

Defendants object to the Magistrate Judge's conclusion that a material issue of fact exists as to whether the State of Arizona was grossly negligent. The Magistrate Judge recommended that the District Court deny Defendants' Motion for Summary Judgment as to the gross negligence claim because: (1) the State failed to enforce a policy requiring all prisoners to wear leg restraints during transfer; (2) Defendant Skol deliberately disregarded a risk to Plaintiff Cortez's safety during transfer; and (3) Sergeant Hawthorne testified that someone forged his name to a report stating that no physical force was necessary to stop the

1  attack. The Court agrees with Defendants that these three factors are insufficient to submit
2  a gross negligence claim to the jury.

3  Under Arizona law, gross negligence "is action or inaction with reckless indifference
4  to the result or the rights or safety of others. A person is recklessly indifferent if he or she
5  knows, or a reasonable person in his or her position ought to know: (1) that his action or
6  inaction creates an unreasonable risk of harm; and (2) the risk is so great that it is highly
7  probable that harm will result." *Armenta v. City of Casa Grande,* 71 P.3d 359, 364-365
8  (Ariz.Ct.App.2003) (internal citation omitted). Under the doctrine of *respondeat superior*,
9  an employer is vicariously liable for the acts of its employees when those acts are within the
10 scope of the employees' authority and performed to further the employer's interests. *Owen*
11 *v. Superior Court of the State of Arizona, In and For Maricopa County*, 649 P.2d 278, 281
12 fn. 6 (Ariz.1982). Given the inherently risky environment in which Plaintiff Cortez's injuries
13 occurred, there is no material issue of fact regarding whether Plaintiff Cortez was exposed
14 to an unreasonable risk, nor is there evidence to suggest that it was highly probable that harm
15 would result.

16 "Prisons are, by the very nature of many of those persons housed within their walls,
17 dangerous, violent, and oftentimes unpredictable." *Falls v. Nesbitt*, 966 F.2d 375, 380 (8th
18 Cir. 1992). While, in hindsight, Defendants could have taken measures which might have
19 prevented Plaintiff Cortez's injuries, the undisputed facts before the Court demonstrate that
20 those injuries were the result of the risk-driven prison environment, not gross negligence by
21 Defendants. While it is undisputed that the State failed to enforce a policy requiring all
22 prisoners to wear leg restraints during transfer, it is also undisputed that the officers who did
23 not use leg restraints during transfer across "no-man's land" did so at the instruction of a
24 supervisor because the leg restraints had previously caused a prisoner to become injured.
25 (Doc. 189-1, pgs. 17, 27.) Thus, the decision not to use leg restraints was made in response
26 to a foreseeable risk of harm. There is no evidence that Defendants knew that moving
27 prisoners without leg restraints would create an unreasonable risk of harm: leg restraints were
28 not used at the detention unit for more than two years without incident. (Doc. 189-1, pgs.

- 9 -

6, 17.) Nor is there evidence of a history of violence during detention unit escorts or any other evidence that would place Defendants on notice of a "high probability" that substantial harm would occur if leg restraints were not used during Plaintiff Cortez's transport. (Doc. 189-1, pg. 6, 17.)

The other two factors cited in the R&R are not persuasive. For the reasons previously stated, Defendant Skol was not deliberately indifferent to a serious risk of harm to Plaintiff Cortez, and therefore even if his actions are imputed to the State they do not give rise to a claim for gross negligence. *See Rourk v. State*, 821 P.2d 273, 280 (Ariz. App. 1991) (describing deliberate indifference and gross negligence claims as "closely intertwined"). The suggestion that someone forged Sergeant Hawthorne's name to a report stating that no physical force was necessary to stop the attack does not have any bearing on whether Defendants ignored an unreasonable and highly probable risk of harm. At best, such conduct might suggest that Defendants retroactively attempted to conceal some admission of an undefined liability. It would require several illogical leaps to conclude that because Defendants attempted to conceal the use of physical force to end the attack, the attack was the result of gross negligence on the part of the State.

Even when the facts are construed in the light most favorable to Plaintiffs, there is no material issue of fact regarding whether the State was grossly negligent. In addition to the factors cited by the Magistrate Judge, Plaintiffs claim that the State was grossly negligent in failing to adopt a policy restricting the transfer of Security Threat Group inmates and protective custody inmates at the same time. According to Plaintiffs, the inmates who assaulted Plaintiff Cortez were Security Threat Group inmates and the assault was motivated by Plaintiff Cortez's status as a protective custody inmate. However, the undisputed evidence indicates that, at the time of the attack, Plaintiff Cortez was housed in the detention unit because of a disciplinary infraction and was not under protective custody.[5] (Doc. 189-2,

---

[5] At his deposition, Sergeant Hawthorne was asked "And you were also aware, I take it, that Mr. Cortez was a PC inmate?" to which Sergeant Hawthorne responded "Yes, I did know he was a PC inmate." (Doc. 198-5, pg. 9.) Plaintiffs did not establish a foundation for Sergeant

pg. 8; Doc. 216 pg. 15.)  Thus, even if the State had adopted the policy suggested by Plaintiffs, the policy would not have diminished the risk of harm to Plaintiff Cortez.

Accordingly, the District Court concludes that Defendants are entitled to summary judgment on Count One of Plaintiffs' Second Amended Complaint.

## CONCLUSION

Accordingly, after an independent review of the pleadings, exhibits and transcript, IT IS HEREBY ORDERED that:

1. The Report and Recommendation (Doc. 216) is ADOPTED IN PART AND REJECTED IN PART;
2. Defendant's Motion for Summary Judgment (Doc. 188) is GRANTED;
3. The Clerk of the Court shall enter judgment and close the file in this matter.

DATED this 2nd day of July, 2012.

_____
Jennifer G. Zipps
United States District Judge

---

Hawthorne's testimony; it is unclear from the excerpts of his deposition why Sergeant believed – incorrectly – that Plaintiff Cortez was PC status. According to the prison AIMS Report, which tracks all disciplinary violations and classification actions for all inmates, Plaintiff Cortez was not PC status at the time of the attack. (Doc. 189-2, pg. 8.)